# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FOCARETO, | ) | Case No. 1:20-cv-0208 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | |
| ANDREW SAUL, Commissioner | ) | MAGISTRATE JUDGE |
| of Social Security | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant. | ) | |
| | ) | REPORT AND RECOMMENDATION |

## I.    Introduction

David Focareto, Plaintiff, seeks judicial review of the final decision of Andrew Saul, the Commissioner of Social Security, denying his application for supplemental security income under Title XVI the Social Security Act. This matter is before me under 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and Local Rule 72.2(b). Because the ALJ followed proper procedures and his decision is supported by substantial evidence, I recommend that the Commissioner's final decision denying Focareto's application for supplemental security income be AFFIRMED.

## II.    Procedural History

Focareto filed for supplemental security income on September 27, 2016, for a period of disability beginning that day. (ECF No. 10 at 19). The Ohio Division of Disability Determination (the "State Agency") initially denied Focareto's claim on May 4, 2017, and denied it again on August 7, 2017, during reconsideration. (ECF No. 10 at 19). Focareto then requested a hearing before an ALJ. (ECF No. 10 at 19). ALJ George Roscoe presided over Focareto's hearing on October 10, 2018. (ECF No. 10 at 19). Focareto appeared with counsel and testified. (ECF No. 10 at 34-46). Michael Klein, Ph.D., testified as an impartial vocational expert. (ECF No. 10 at 34-46).

1

The ALJ issued his decision on January 8, 2019. He determined that Peirce was not disabled under the Social Security Act. (ECF No. 10 at 19-29). In mid-February 2019, Focareto timely asked the Appeals Council to review and set aside the ALJ's ruling. (ECF No. 10 at 9). The Appeals Council denied Focareto's request on December 5, 2019; thus, Focareto's administrative decision was final as of that date. (ECF No. 10 at 5-13). This timely appeal followed. (ECF No. 1).

## III.    Relevant Background

The ALJ's narratives of the relevant hearing testimony, medical evidence, and opinion evidence provide useful background in this case.

### A.  Hearing Testimony

> The claimant testified that he is disabled due to bilateral knee pain. He said that he cannot stand for more than an hour and cannot lift anything over 25 pounds…
>
> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled occupations performed at the medium level of exertion such as those listed below; he also provided estimates of the number of available jobs in the national economy for each occupation.
>
> •       Hand packager (DOT# 920.587-018), SVP 2, estimated 130,000 jobs.
> •       Production help her (DOT# 691.687-010), SVP 1, estimated 100,000 jobs.
> •       Kitchen helper (DOT# 318.687-010), SVP 2, estimated 85,000 jobs.
>
> The vocational expert testified that these were merely representative jobs, and that others existed that a hypothetical individual of the same age and education and with the claimant's residual functional capacity would be able to do. He also affirmed that his testimony was consistent with the Dictionary of Occupational Titles ["DOT"], and its companion volume, the Selected Characteristics of Occupations.

(ECF No. 10 at 25, 28-29).

### B.  Medical Evidence

A chest X-ray was done on January 16, 2015, well before the claimant's alleged onset date, which establishes mild degenerative changes in the thoracic spine. (Exhibit 4F, p. 37). Shortly after the claimant's alleged onset date, on October 29, 2016, he was treated at the emergency department after falling off his bicycle. Physical examination showed that he had full range of motion in all four extremities, mild tenderness in the upper thoracic spine and non-tenderness in the rest of the thoracic and lumbar spine. CT imaging of the claimant's cervical spine revealed degenerative changes. (Exhibit 2F, p. 12).

As for the claimant's knees, X-ray imaging was completed on November 15, 2016, which established mild osteoarthritic changes in the bilateral knees. (Exhibits 4F, p. 3-4; 12F, p. 4-5). There is no indication that the claimant received active treatment for this condition until July 26, 2017, when he presented at his primary care provider's office with complaints of worsening knee pain. Physical examination revealed a bilateral antalgic gait, limitation of knee flexion bilaterally to 0/125°, no pain with McMurray testing or with hip range of motion testing, and intact neurovascular status. Dr. Karnes noted that the claimant's standing and lateral knee X-rays showed 'pretty good' joint space maintenance. He treated both knees with Kenalog injections. (Exhibits 8F, p. 6; 12F, p. 7-9; 13F, p. 18-19).

Dr. Karnes referred the claimant for physical therapy treatment. At his first physical therapy appointment on August 18, 2017, the claimant described his pain as varying in intensity, but aggravated by using steps, bending, and squatting. The notes indicate that he was ambulating without an assistive device and reported that he enjoyed baseball and bike riding. These physical therapy records show that the claimant attended four sessions, was reporting some improvement, and was discharged to a home exercise program. (Exhibit 13F, p. 6-11).

When the claimant went to a follow-up appointment with Dr. Karnes on September 20, 2017, he was reporting minimal relief with the cortisone injections and continued knee pain, which was bilateral but greater in the left knee. Dr. Karnes' physical examination revealed medial joint line tenderness, mild pain with McMurray testing, and intact neurovascular status. (Exhibit 13F, p. 16-17).

The claimant also underwent an assessment at the Louis Stokes Cleveland VA Medical Center. Notes from this assessment show

3

that the claimant reported bilateral knee pain with weekly flare-ups that last one to two days, and which were associated with increased activity, including walking, standing, stair climbing, and squatting. The claimant reported treating this pain with Advil and stretching exercises, and denied any functional limitations. Physical examination findings showed that the claimant had normal range of motion in the bilateral knees, but pain with weight-bearing. Physical examination also revealed objective evidence of localized tenderness on palpation of the knee joints bilaterally; however, there were no findings of muscle atrophy or loss of strength. (Exhibit 14F, p. 23-28).

(ECF No. 10 at 25-26).

### C. Opinion Evidence

At the reconsideration level of the claim, on August 5, 2017 state agency medical consultant Leanne M. Bertani, M.D., opined that the claimant is limited to the medium level of exertion, can push and pull frequently with his bilateral lower extremities, can occasionally climb ramps, stairs, ladders, ropes and scaffolds, can occasionally crawl, and can frequently balance, stoop, kneel, and crouch. (Exhibit 2A, p. 10)…

Daniel Karnes, M.D. responded to a request for his opinion regarding the claimant's residual functional capacity on October 3, 2018. In his response, he described the claimant's symptoms as bilateral knee pain with medial joint line tenderness. He indicated that this pain is 'aggravated with stair climbing [ and] bending.' He reported that the claimant has an antalgic gait, and limited flexion in his knees bilaterally, but said that X-ray imaging showed he had good joint space maintenance. He said that the claimant receives cortisone injections in his bilateral knees as needed for pain. Dr. Karnes declined to provide an opinion regarding any exertional or postural limitations that the claimant has, but said that the claimant did not need to elevate his legs or use a cane or other hand-held assistive device. He said the claimant had no limitations with reaching, handling, or fingering. (Exhibit 15F, p. 2-4).

(ECF No. 10 at 27).

### IV.  The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

2.    The claimant has the following severe impairments: mild

4

osteoarthritis of the knees and cervical spine (20 CFR 416.920(c))…

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform medium work as defined in 20 CFR 416.967(c), except he cannot climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl (20 CFR 416.969a)…

The records of the claimant's bilateral mild osteoarthritis of the knees and cervical/thoracic spine support the finding that the claimant is limited to the medium level of exertion, cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. First, when the claimant filed his initial claim for supplemental security income benefits, he reported that he stopped working on May 10, 2016 because he was let go by his employer, not because of his alleged impairments. (Exhibit 3E, p. 2). The record contains a number of references to the claimant's attempts to find a job following his alleged onset date. (Exhibits 1F, p. 9; 3F, p. 3; 10F, p.3; 13F, p. 11; 14F, p. 4).

Additionally, objective imaging shows no more than mild osteoarthritis in the claimant's back and knees. Physical examinations show no loss of extremity strength, and only occasional findings of knee tenderness, slight decreases in range of motion, and antalgic gait. The claimant presented to the emergency room after his alleged onset date for treatment after sustaining injuries when he was riding his bike, and he reported to his physical therapist on August 18, 2017 that he enjoys baseball and bike riding. These physical activities suggest[] a lesser degree of physical limitation than the claimant alleges. (Exhibits 8F, p. 6; 12 F, p. 7-9; 13 F, p. 11; 14F, p. 23-28)…

The undersigned accords significant weight to Dr. Bertani's opinion, as it is generally well-supported in the record. However, the undersigned finds no support for the limitation she gave in pushing and pulling with the bilateral lower extremities. On the other hand, the undersigned finds the claimant has a greater degree of postural

limitation, in that he can never climb ladders, ropes, and scaffolds and can occasionally balance, stoop, kneel, and crouch. This degree of limitation is supported by the records that were received after the state agency reconsideration determination. These records contain physical examination findings of joint tenderness, and show that the claimant was receiving little benefit from physical therapy and cortisone injections. (Exhibits 9F; 12F; 13F, p. 5-6, 16-17; 14F)…

The undersigned accords limited weight to Dr. Karnes opinion, because he did not provide an actual opinion regarding exertional or postural limitations imposed by the claimant's impairment. On the other hand, the undersigned gives some weight to this opinion, as it is consistent with Dr. Karnes' description of the claimant's condition as being 'mild' knee arthritis. (Exhibit 9F)…

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a)…

10.    The claimant has not been under a disability, as defined in the Social Security Act, since September 27, 2016, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 10 at 22-29).

## V.     Law and Analysis

### A.     Standard of Review

The court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility

determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor when testifying."). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus, the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards—"fails to follow its own regulations"—unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not

harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[1] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

---

[1] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

8

**B.      Issues Presented**

Focareto raises three objections. First, Focareto argues that the "ALJ erred when he failed to properly consider Focareto's bilateral knee osteoarthritis." (ECF No. 13 at 1). Within that broad issue, Focareto tangentially objects on three distinct grounds. He asserts that the ALJ: (1) misapplied the treating-physician rule concerning Karns' submission; (2) erred in constructing Focareto's RFC, as it lacks both a logical bridge and substantial evidence; and (3) rejected facts in Karns' submission that favored a disability finding, *i.e.*, selectively parsed that record. (*See* ECF No. 13 at 8-12).

Second, Focareto argues that the "ALJ erred when he did not properly evaluate Focareto's credibility." (ECF No. 13 at 1). Although Focareto characterizes this as a credibility objection, the crux of Focareto's short argument is that the ALJ did not have enough time to fairly evaluate Focareto's statements because the ALJ presided over a thirteen-minute-long hearing. (ECF No. 13 at 12-14).

Third, Focareto argues that the "ALJ … failed to meet his burden at Step Five of the Sequential Evaluation." (ECF No. 13 at 1). That argument focuses on Klein's vocational expert testimony. (ECF No. 13 at 14-15). Focareto asserts that the ALJ should have sought Klein's opinion on a hypothetical that would have focused on his knee pain and the ability to only frequently push or pull with his lower extremities. (ECF No. 13 at 14-15).

**C.      Focareto's Bilateral Knee Osteoarthritis**

The ALJ accorded "limited weight to Dr. Karnes opinion[] because he did not provide an actual opinion regarding exertional or postural limitations imposed by [Focareto's] impairment." (ECF No. 10 at 27). But the ALJ also gave "some weight to this opinion, as it is consistent with Dr. Karnes' description of the claimant's condition as being 'mild' knee arthritis." (ECF No. 10 at

27). Focareto attacks the ALJ's treatment of this opinion in three ways. The Court discusses each below.

### 1.    The Weight Accorded to Karns' Submission

Although never directly saying so, Focareto appears to argue that the ALJ should have accorded to Karns' submission controlling weight because his submission is a medical opinion. (ECF No. 13 at 8-10). The Court construes this argument as such because Focareto calls Karns "the treating orthopedist" and diligently details the controlling-weight standard in his brief. (ECF No. 13 at 8-13).

An ALJ must give a treating source's medical opinion controlling weight if it: (1) is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2), *repealed*, 82 Fed. Reg. 15,132 (Mar. 27, 2017).[2] But the controlling regulation defines a *medical opinions* as "statements from acceptable medical source that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Medical statements that do not meet that definition or that cover "issues reserved to the Commissioner" (typically "administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability") are medical-source statements. 20 C.F.R. § 416.927(d). An ALJ "will not give any special significance" to medical-source statements—they are not entitled to controlling weight under the

---

[2] 20 C.F.R. § 416.927 was prospectively repealed on March 27, 2017. Because Focareto filed his claim on before that date, the regulation controlled the ALJ's analysis of the opinion evidence.

treating-physician rule, nor are they subject to the medical opinion factors analysis. 20 C.F.R. § 416.927(d)(3).

On the first page of his four-page submission, Karns provides only basic medical information, such as listing the frequency and length of his contact with Focareto; Focareto's diagnoses, prognosis, symptoms, clinical findings, and treatments; and characterizing Focareto's pain as "3/10." (ECF No. 10 at 417). He also notes that Focareto's pain is "aggravated by stair climbing and bending." (ECF No. 10 at 417). The remaining three pages seek a doctor's medical opinion on sitting, standing, and walking generally and with an assistive device; the need for unscheduled breaks and elevating the legs; lifting, manipulating, and other postural activities; and mental or environmental factors that affect the patient's ability to work. (ECF No. 10 at 417-20). Karns does not give such an opinion. Instead, Karns answers these subsequent questions with either "no" (meaning no limitation is required) or a handwritten "unknown" or "N/A," or he offers no answer at all. (ECF No. 10 at 417-20).

The Court concludes—as did the ALJ—that Karns' submission is only a medical-source statement; thus, it is not a medical opinion to which controlling weight could be given. 20 C.F.R. § 416.927(d)(3). As the ALJ noted, Karns "did not provide an actual opinion regarding exertional or postural limitations imposed by [Focareto's] impairment." (ECF No. 10 at 27). Karns' submission does not reflect his judgment about the nature and severity of Focareto's impairments; he never opines on Focareto's condition or that he requires any particular functional limitation. In short, Karns' submission is not opinion on which an ALJ can rely. Even Karns' statement concerning Focareto's pain as he climbs stairs or bends is not an opinion because it simply states a medical fact. Accordingly, the ALJ did not err in according little weight to Karns' medical-source statement, and substantial evidence supports that decision because a reasonable person might

accept the ALJ's reasoning as adequate to support his conclusion. *Rogers*, 486 F.3d at 241.

Relatedly, because medical-source statements are not entitled to any specific weight (20 C.F.R. § 416.927(d)(3)), Focareto's general assertion that it is inappropriate for an ALJ to give greater weight to Bertani's consultative opinion than to Karns' submission is meritless. (ECF No. 13 at 8). And even if Karns' submission was an opinion, the Sixth Circuit holds that an ALJ may properly give greater weight to a State Agency consultant's opinion than he might to an examining or treating source—it is "not, in and of itself, error." *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007). Indeed, "[i]n appropriate circumstances, opinions from State [A]gency medical … consultants … may be entitled to greater weight than the opinions of treating or examining sources." *Id.* (quoting Soc. Sec. Ruling 96-6p, 1996 WL 374180, at 3 (S.S.A. July 2, 1996)).

### 2. Focareto's RFC

Focareto also impliedly challenges the RFC. The ALJ found that Focareto could "perform medium work as defined in 20 CFR 416.967(c), except he cannot climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." (ECF No. 10 at 24-25). Focareto indirectly argues that the ALJ should have found that Focareto cannot perform medium work because Focareto experiences knee pain and receives occasional cortisone injections in his knees. (ECF No. 14 at 9). And Focareto impliedly argues that he should have received additional limitations to his RFC for bending, pushing, and pulling. (ECF No. 13 at 15).

During the sequential evaluation process, an ALJ must identify the claimant's RFC, which "is the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC denotes "functional limitations and restrictions and … [the claimant's] remaining capacities for work-related activities." Soc. Sec. Ruling 96-08p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The ALJ must "assess[] 'an individual's ability to do sustained work-related physical and

12

mental activities in a work setting on a regular and continuing basis.'" *Stewart v. Comm'r of Soc. Sec.*, 881 F. App'x 349, 355 (6th Cir. 2020) (quoting SSR 96-08p, at *1). The ALJ must "consider [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(b)(4); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). A RFC determination is a legal finding, not a medical determination; thus, an "ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)).

Medium exertional work means "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Soc. Sec. Ruling 83-10p, 1983 WL 31251, at *6 (S.S.A. 1983). It requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." *Id.* "[S]itting may occur intermittently during the remaining time." *Id.* Despite the possibility of lifting up to 50 pounds, "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." *Id.* Generally, medium work "requires frequent bending-stooping… [and f]lexibility of the knees as well as the torso is important for this activity." *Id.*

The Court concludes that the RFC is supported by substantial evidence and that the ALJ built a logical bridge between the evidence in the record and his conclusion. The ALJ narrated the evidence in the record, explaining that Focareto testified about being unable to "stand for more than an hour … [or] lift anything over 25 pounds" without experiencing knee pain. (ECF No. 10 at 25). He noted that Focareto had his knees x-rayed in November 2016, which yielded a mild-osteoarthritis diagnosis in both knees. (ECF No. 10 at 25). The ALJ also noted that Focareto's knee

13

flexion was limited to 125 degrees[3] bilaterally with mild to no pain on McMurray testing and some medial joint-line tenderness. (ECF No. 10 at 25-26). The ALJ also noted that Karns treated Focareto's knee pain with Kenalog injections, which, according to Focareto, provided him only minimal relief. (ECF No. 10 at 25-26). Generally, Focareto's knee pain was "associated with increased activity, including walking, standing, stair climbing, and squatting," which Focareto treated with over-the-counter pain medications. (ECF No. 10 at 26). Relatedly, the ALJ noted that Focareto stated to his physical therapists that still enjoyed physical activity such as "baseball and bike riding." (ECF No. 10 at 26 (citing ECF No. 10 at 372)). And during a visit with the VA, Focareto "denied any functional limitations" and noted that he had no muscle atrophy or loss of strength. (ECF No. 10 at 26).

Focareto suggests that he requires a bending limitation. (ECF No. 13 at 15). He draws this conclusion from a statement in Karns' medical-source statement in which Karns says that Focareto's knee pain is "aggravated with stair climbing [ and] bending." (ECF No. 10 at 417). This is merely a medical statement; Karns never opines that Focareto's pain requires a functional limitation. Focareto does not point to any other evidence in the record that would support a particular bending limitation, and the Court does not find any, either. Accordingly, the Court concludes that substantial evidence supports the ALJ's decision to not include a bending limitation in the RFC.

Focareto also argues that he requires limitations for pushing and pulling. The only support for those limitations is Bertani's consultative opinion. (ECF No. 10 at 82). During the reconsideration stage of the State Agency's assessment, Bertani opined that Focareto was limited

---

[3] Average knee flexion for males ages 45 to 69 is about 133 degrees. *Normal Joint Range of Motion Study*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/ncbddd/join trom/index.html (last reviewed Mar. 31, 2020).

14

to only frequent pushing and pulling because "[i]nterpretation of imaging in file notes preserved medial and lateral knee joint space. Treated with Kenalog injection[s] for mild patellar osteoarthritis. Push/pull with [bilateral lower extremities is] limited to frequent." (ECF No. 10 at 82). Although the ALJ generally gave significant weight to Bertani's opinion, he rejected Bertani's frequent pushing and pulling limitations because they were not supported by the record. (ECF No. 10 at 27). The Court concludes that the ALJ adequately explained his decision to reject these limitations and that decision is supported by substantial evidence. Bertani only mentions that Focareto receives cortisone shots; she does not explain why receiving knee injections would require either a pushing or a pulling limitation. Moreover, Focareto has not pointed to any other evidence in the record that would support Bertani's limitation, and the Court has not found any, either. Accordingly, substantial evidence supports the ALJ's decision to reject this limitation as unsupported in the record.

Ultimately, substantial evidence supports a finding that Focareto was capable of medium exertional work with certain limitations—which the ALJ included in the RFC—because a reasonable person might accept the ALJ's reasoning as adequate to support his conclusion. *Rogers*, 486 F.3d at 241. Focareto admits that he can lift up to or less than 25 pounds without pain. And the ALJ, upon assessing the medical evidence within his zone of choice, determined that Focareto could "climb ramps and stairs, balance, stoop, kneel, crouch, and crawl" only occasionally, and never "climb ladders, ropes, or scaffolds…" (ECF No. 10 at 26). Focareto has not demonstrated that he requires additional limitations. Accordingly, substantial evidence supports the RFC.

### 3.    Selectively Parsing the Record

Focareto also states that "it appear[s] that the ALJ relied on Dr. Karns [*sic.*] findings where they fit in with his desire to find that Focareto could perform work at the medium level of exertion,

but failed to consider any limitations … [that Karns] assessed based on his examinations and cortisone injections into Focareto's knees." (ECF No. 13 at 9). The Court construes Focareto's statement to be an argument that the ALJ selectively parsed Karns' submission.

The Court concludes that Focareto has waived this argument. In *Hollon v. Comm'r of Soc. Sec.*, the Sixth Circuit declined to review the substance of an argument that the petitioner had "made little effort to develop … in her brief." 447 F.3d 477, 491 (6th Cir. 2006). The court noted that it "decline[d] to formulate arguments on [the petitioner]'s behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the [ALJ]'s decision, and (ii) if so, whether the [ALJ] sufficiently accounted for this evidence." *Id.* Instead, the court "limit[ed its] consideration to the particular points that [the petitioner] appears to raise…" *Id.* So too here. Focareto merely asserts that the ALJ has selectively parsed the record. He does not explain the law at issue, nor does he direct the Court to the specific facts or limitations that the ALJ improperly ignored. The Court is not inclined to review the record in search of the facts that might corroborate Focareto's assertion. Accordingly, the Court concludes the Focareto has waived this argument.

But even if Focareto had not waived the argument, his argument is meritless. The regulations compel ALJs to "consider all evidence available in [an] individual's case record." 42 U.S.C. § 423(d)(5)(B). In carrying out that duty,

> an ALJ may not selectively include only those portions of the medical evidence that places a claimant in a capable light, and fail to acknowledge evidence that potentially supports a finding of disability. Courts have not hesitated to remand under such circumstances. *See*, *e.g.*, *Gentry* [*v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014)] (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson* [*v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008)] (finding error where the ALJ was "selective in parsing the various medical reports") *see also Williams v. Colvin*,

>2017 WL 1319781 at * 16 (N.D Ohio Feb. 1, 2017), *report and recommendation adopted by*, 2017 WL 1304475 (N.D. Ohio April 7, 2017); *Ackles v. Colvin*, 2015 WL 1757474 at * 6 (S.D. Ohio April 17, 2015), *report and recommendation adopted by*, 2015 WL 2142396 (S.D. Ohio May 6, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light.") … *Taylor v. Comm'r of Soc. Sec.*, 2014 WL 1874055 at * 4 (N.D. Ohio May 8, 2014) (stating it "is clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—i.e., 'cherry-picking' it—to avoid analyzing all the relevant evidence. This is particularly so when the evidence ignored is from a treating physician.["]).

*Davidson v. Berryhill*, No. 16-cv-2621, 2017 WL 4682343, at 17 (N.D. Ohio Oct. 18, 2017).

At the same time, "it is well settled that …an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006); *accord Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Notably, there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (endorsing the Third Circuit's analysis in *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000) ("[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."). Further, "'an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Similarly, the Sixth Circuit has noted that cherry-picking arguments can "cut[] both ways,"

as they may turn on whether the ALJ's decision falls within his "zone of choice" under substantial evidence review. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Indeed, what plaintiff-appellants have called cherry-picking "can [at times] be described more neutrally as weighing the evidence," and the claimant bears the burden of persuading the court "that the ALJ erred in conducting this difficult task." *Id.* at 284.

The Court is satisfied that the ALJ considered the whole of Karns' opinion—and the rest of the record—and assessed it fairly. The ALJ noted that Karns

> described the claimant's symptoms as bilateral knee pain with medial joint line tenderness. He indicated that this pain is 'aggravated with stair climbing [ and] bending.' He reported that the claimant has an antalgic gait, and limited flexion in his knees bilaterally, but said that X-ray imaging showed he had good joint space maintenance. He said that the claimant receives cortisone injections in his bilateral knees as needed for pain. Dr. Karnes declined to provide an opinion regarding any exertional or postural limitations that the claimant has, but said that the claimant did not need to elevate his legs or use a cane or other hand-held assistive device. He said the claimant had no limitations with reaching, handling, or fingering. (Exhibit 15F, p. 2-4).

(ECF No. 10 at 27). This passage correctly captures the substance of Karns' submission. Karns listed medical information but left blank many of the questions on the medical-source statement form that related to physical limitations—and he answered many others with "N/A" or "unknown." (ECF No. 10 at 417-20). Because the ALJ considered all of the evidence in Karns' submission, and because Focareto fails to point to any evidence that the ALJ failed to consider, the Court concludes that the ALJ did not selectively parse Karns' submission.

### D.      The Length of the Hearing

Focareto's second objection cites to case law and social security rulings that discuss the ALJ's duty to evaluate symptoms of disability, *i.e.*, to adjudicate the claimant's credibility at a hearing. (ECF No. 13 at 12-14). But the substance of Focareto's second objection concerns the

length of the hearing, which lasted a mere 13 minutes. (ECF No. 13 at 8, 13-14). In Focareto's

opinion, "the ALJ did not have time to make a determination regarding whether Focareto's

statements were consistent with the medical evidence and other evidence in the record" because

the hearing was so short. (ECF No. 13 at 13-14). Thus, Focareto alleges that the ALJ could "not

properly evaluate the medical evidence and make a defensible determination as to whether

Focareto's testimony was credible." (ECF No. 13 at 13).

The Court construes this argument as a full-and-fair-hearing argument, which is a

procedural due process objection. As the Court noted in *Byers v. Comm'r of Soc. Sec.*,

> [d]ue process requires that a claimant's hearing be 'fundamentally
> fair.' *Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 424-25 (6th
> Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401–02,
> 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971)). Evaluation of a due process
> claim requires consideration of three factors: (1) 'the private interest
> that will be affected by the official action'; (2) 'the risk of an
> erroneous deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute procedural
> safeguards'; and (3) 'the Government's interest, including the
> function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.'
> *Watters*, 530 F. App'x at 425 (quoting *Flatford v. Chater*, 93 F.3d
> 1296, 1306 (6th Cir.1996)); see also *Mathews v. Eldridge*, 424 U.S.
> 319, 335, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976).

No. 1:19-cv-2814, 2020 WL 7364233, at *8 (N.D. Ohio Nov. 24, 2020), *report and*

*recommendation adopted*, *Byers v. Comm'r of Soc. Sec.*, No. 1:19-cv-2814, 2020 WL 7352663

(N.D. Ohio Dec. 14, 2020). The relevant procedural obligation at issue is the ALJ's duty to

"develop [the claimant's] complete medical history for at least the 12 months preceding the month

in which [the claimant] file[s its] application…" 20 C.F.R. § 404.1512(b)(1).

The Commissioner argues that Focareto has procedurally waived this argument because he

did not fully brief Focareto's chief complaint: the hearing's short duration. (ECF No. 16 at 4). The

Court agrees with the Commissioner under the authority cited above. *E.g.*, *Hollon*, 447 F.3d at

491. Here, Focareto merely asserts that an ALJ could not, as a matter of law, satisfy his burden of determining a claimant's credibility in a 13-minute hearing. (ECF No. 13 at 12-14). Focareto cites no case law to support this, though, and Focareto's discussion of the standards under which an ALJ weighs a claimant's subjective symptoms does not help, either. Accordingly, this argument is waived because Focareto made little effort to develop it or tailor it to this case.

But even if the argument were not waived, it would be meritless. There is "no bright-line rule requiring ALJs to conduct hearings of certain lengths." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 363 (6th Cir. 2014) (citing *Lashley v. Sec'y of Health and Human Servs.*, 708 F. 2d 1048, 1052 (6th Cir. 1983)). And concerning the process that he received, Focareto was represented by counsel; the ALJ permitted Focareto's counsel to direct Focareto's testimony and examine the vocational expert until Focareto's counsel had no further questions. (ECF No. 10 at 34-46). Moreover, Focareto's counsel did not object to the medical evidence in the record (ECF No. 10 at 37) or supplement the record with additional evidence after the hearing. Thus, the Court presumes that Focareto was satisfied with the evidence that he submitted to support his claim. Because Focareto does not argue that the ALJ failed to develop Focareto's complete medical history, and because Focareto's hearing-length argument is not supported by case law, the Court deems this argument to be meritless.

### E.      The Vocational Expert's Testimony

Focareto's third objection concerns Klein's vocational expert testimony. (ECF No. 13 at 14-15). Focareto asserts that the ALJ erred by not asking Klein certain hypotheticals "regarding bending or limited pushing and pulling." (ECF No. 13 at 15). Focareto now asserts that "this matter should be remanded for testimony as to whether a person with any of these limitations could perform work at the medium exertional level." (ECF No. 13 at 15). Because the Court concluded

20

above that substantial evidence supports the RFC—which did not include those limitations—this final argument lacks merit.

After fashioning the RFC, the ALJ may ask a vocational expert to testify about whether work exists in significant numbers in the national economy that could be performed by an individual with certain hypothetical limitations. 20 C.F.R. § 416.966(e). At Step Five, the Commissioner has the burden of prooving "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform." *Id.* (emphasis added). If a Claimant has not established limitations to be included in an RFC by Step Four, the burden does not shift to the Commissioner to prove an RFC—or its limitations—at Step Five. *Id.* at 392.

"To meet the burden of showing that [the claimant] could perform work that is available in the national economy, the Commissioner must make a finding [that is] 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). "This kind of [s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.*

The ALJ did not need to elicit additional vocational expert testimony concerning Focareto's ability to push, pull, or bend because those limitations do not accurately portray Focareto's individual physical impairments. *Howard*, 276 F. 3d at 238. Focareto's only support for eliciting vocational expert testimony on a pushing or a pulling limitation is Bertani's opinion.

21

(ECF No. 13 at 15). For the reasons stated above, substantial evidence supports the ALJ's decision to reject those limitations as unsupported by the record. Because those limitations did not accurately reflect Focareto's individual physical impairments, it was not error to not elicit vocational expert testimony about them. Similarly, the ALJ did not need to elicit additional vocational expert testimony concerning Focareto's ability to bend. Focareto's only support for eliciting vocational expert testimony on that possible limitation is Karns' medical-source statement (which did not opine on a specific limitation, but merely stated that bending aggravated Focareto's knee pain). (ECF No. 13 at 15). For the reasons stated above, substantial evidence supports the ALJ's decision to not limit Focareto's ability to bend. And because that limitation did not accurately reflect Focareto's individual physical impairments, it was not error to not elicit vocational expert testimony about it. Accordingly, Focareto's third objection is meritless.

The Court also concludes that substantial evidence supports the ALJ's reliance on Klein's vocational expert testimony. The ALJ found that Focareto "has the residual functional capacity … to perform medium work as defined in 20 CFR 416.967(c), except [that] he cannot climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl…" (ECF No. 10 at 24-25). The ALJ posed a hypothetical question to Klein that discussed those exact limitations:

> [T]his individual is limited to work a[t] medium exertional requirements, but … [limited to] no climbing of ladders, ropes, or scaffolds; and, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling… [Do] jobs exist in significant numbers in the economy that this individual could perform?"

(ECF No. 10 at 43). Klein opined that the hypothetical individual, as limited, could perform jobs that exist in significant numbers in the national economy. (ECF No. 10 at 43). He opined on three representative occupations: (1) "hand packager" (130,000 jobs); (2) "production helper" (100,000

22

jobs); and (3) "kitchen helper" (85,000 jobs). (ECF No. 10 at 43-44). Each representative occupation is medium-level work, and Klein stated that his vocational expert testimony was consistent with the DOT. (ECF No. 10 at 43-44). Because the hypothetical question accurately portrayed Focareto's physical impairments, substantial evidence supports the ALJ's finding that Focareto can perform work in national the economy.

## VI. Recommendation

Because the ALJ followed proper procedures and his decision is supported by substantial evidence, I recommend that the Commissioner's final decision denying Focareto's application for supplemental security income be AFFIRMED.

DATED: 1/28/2021

*Carmen Henderson*
_____
Carmen E. Henderson
United States Magistrate Judge

_____

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); see also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).